**UNITED STATES of America,**
**Plaintiff,**
v.
**Albert Samuel LEVIN, etc., Defendant.**
**Crim. No. 13509.**

United States District Court
D. Colorado.
May 15, 1953.

Robert Bugdanowitz, Asst. U. S. Dist. Atty., Denver, Colo., for plaintiff.

Earl Hower and David Allen, Denver, Colo., for defendant.

PICKETT, Circuit Judge.

The defendant Levin was indicted on two counts. The first count charged that he transported in interstate commerce an emerald ladies dinner ring of the value of $10,000, knowing it to have been converted. This count was based upon the National Stolen Property Act, 18 U.S.C.A. § 2314. The second count alleged that the defendant Levin knowingly and wilfully made a false and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation "in that he did state and represent to the Federal Bureau of Investigation that he had never told any one that he had any information as to the identity of the owner of a genuine Columbian velvet-green emerald ladies dinner ring when in truth and in fact he had told a certain person that he had certain information as to the identity of the owner of the said ring." This charge was under 18 U.S.C.A. § 1001, which provides that: "Whoever,

in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing, or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both." A motion to dismiss the second count was sustained by this court on the ground that it failed to allege a crime under the laws of the United States. The United States has filed a motion in which it seeks to have this order set aside because it is contrary to law. Arguments on this latter motion have been heard in full.

The motion to dismiss and the subsequent motion present squarely the question of whether it is a violation of Section 1001 for any person to intentionally fail to tell the truth to any investigator of any agency of the United States relating to a matter which is within the jurisdiction of the department or agency of the United States which the agent represents.

This section as originally enacted was an amendment to the statute which penalized the making of false, fictitious or fraudulent claims against the United States. 18 U.S.C. § 80, now 18 U.S.C.A. § 287. In the 1948 recodification of the criminal code, the amendment was taken out of the original act and became Section 1001.

In United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 522, 85 L.Ed. 598, it was held that the amendment, which is now Section 1001, was not to be restricted to matters similar to those covered by the original act such as claims against, the right to, or controversies about funds involved in the operations of the government, or to matters which the government had some financial or proprietary interest. The court in that case, however, seemed to be particularly careful to limit the statute to the false or fraudulent use of documents or affidavits. The charge there was that the defendant had wilfully caused to be made and used verified reports which were required by the Connally Act and which falsely and fraudulently stated the amount of petroleum produced from certain oil wells. 15 U.S.C.A. § 715 et seq. The indictment was upheld as setting forth a violation of that portion of the statute which is now Section 1001. As stated, the opinion in that case specifically limited the violation of the statute to the use of "false and fraudulent statements or representations where these were knowingly and willfully used in documents or affidavits". There was no indication that this construction would be extended to include false oral statements of any person not under oath which were made to an investigator or to any other person representing a department or agency of the United States in a matter within the jurisdiction of the department or agency.

There are numerous decisions which have upheld prosecutions under this section. Substantially, all of them have to do with false documents, and generally they are cases involving claims against the United States. No decision has been found which holds that the failure to tell the truth to an agent or representative of a department or agency of the United States by a person under no legal obligation to speak, is a violation of Section 1001. The closest case is Marzani v. United States, 83 U.S.App.D.C. 78, 168 F.2d 133, affirmed 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431. In that case the defendant had been employed by the United States in the State Department. He was requested to resign his position for security reasons. In an interview with his superior officer he was advised of various charges against him, including the charges that he had been a member of the Communist Party and that he had operated under an alias. These charges he falsely denied to his superior officer. He was indicted and convicted of a violation of that portion of the statute which is now Section 1001, and his con-

viction was affirmed. On appeal the Court of Appeals pointed out that the proceeding in which the false statements were made was in the nature of an appeal from the request for a resignation. The false statements were made to an officer who had the authority to make a final disposition of the pending matter by one employed or entitled to employment by the United States. It is clearly distinguishable from a situation where the representative of a department or agency of the United States is merely collecting facts or information from persons under no legal obligation to give information to determine whether any action shall be taken by that agency or department, or to sustain action which has been taken.

█ If the statute is to be construed as contended for here by the United States, the results would be far-reaching. The age-old conception of the crime of perjury would be gone. 18 U.S.C.A. § 1621. Any person who failed to tell the truth to the myriad of government investigators and representatives about any matter, regardless of how trivial, whether civil or criminal, which was within the jurisdiction of a department or agency of the United States, would be guilty of a crime punishable with greater severity than that of perjury. In this case the defendant could be acquitted of the substantive charge against him and still be convicted of failing to tell the truth in an investigation growing out of that charge, even though he was not under oath. An inquiry might be made of any citizen concerning criminal cases of a minor nature, or even of civil matters of little consequence, and if he wilfully falsified his statements, it would be a violation of this statute. It is inconceivable that Congress had any such intent when this portion of the statute was enacted. A literal construction of a statute is not to be resorted to when it would bring about absurd consequences, or flagrant injustices, or produce results not intended by Congress. Sorrells v. United States, 287 U.S. 435, 446, 53 S.Ct. 210, 77 L.Ed. 413. The lack of this intention is clearly illustrated from the fact that numerous statutes have been passed which authorize agents of different departments and agencies of the United States to administer oaths to those from whom they are seeking information. 5 U.S.C.A. § 93 authorizes any officer or clerk of any of the departments lawfully detailed to investigate frauds on, or attempts to defraud the government or any irregularity or misconduct of any officer or agent of the United States to administer an oath to any witness called to give testimony. This authority was extended in 5 U.S.C.A. § 93a. Special authority to administer oaths in the course of an investigation is given in the following statutes:

5 U.S.C.A. § 521 (Officers of Department of Agriculture who are designated by the Secretary); 5 U.S.C.A. § 498 (Investigators with the Department of Interior); 7 U.S.C.A. § 420 (Secretary of Agriculture or any representative authorized by him in the administration of the Cotton Futures Act, Grain Standards Act, Warehouse Act, and Standard Containers Act); 8 U.S.C. § 152, now 8 U.S.C.A. §§ 1225(a), 1357(b) (Immigration inspectors with respect to aliens); 12 U.S.C.A. § 481 (Federal Bank Examiners in examination of federal banks or affiliates thereof); 18 U.S.C.A. § 4004 (Wardens, superintendents, and associate wardens of Federal Penal Institutions); 19 U.S.C.A. § 1486 (Customs officer, chief assistants or any employee of the Bureau of Customs designated by the Secretary of the Treasury, or in their absence, postmasters or assistant postmasters in matters involving less than $100); 26 U.S.C.A. §§ 3632(a) and 3654 (a) (Collector, Deputy Collector of Internal Revenue, and agents and officers making investigations); 42 U.S.C.A. § 272 (Medical Quarantine Officers of United States).

██ If Section 1001 is to be construed to extend to cases where false statements are made by a person not under oath, then the general perjury statutes and these special statutes would appear to be unnecessary. When the charge involves statements made when

not under oath a reasonable and sensible construction of the statute would be to limit its application to persons under legal obligation to speak or to give information to representatives of an agency or department of the United States who have authority to finally dispose of the matter being investigated, and to cases where the keeping of records or the filing of documents are required or permitted by law. In other cases the perjury statutes are adequate.

The motion to dismiss the second count of the indictment is reconsidered and sustained. An order shall be prepared and entered accordingly.