**UNITED STATES of America, Appellee,**

v.

**Calvin W. COLE, Appellant.**

**No. 79–5252.**

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1980.

Decided June 3, 1980.

Kenneth E. Labowitz, Alexandria, Va. (Labowitz & Labowitz, Alexandria, Va., on brief), for appellant.

Joseph J. Aronica, Asst. U. S. Atty., Alexandria, Va. (Justin W. Williams, U. S. Atty., James Roland DiFonzo, Sp. Asst. U. S. Atty., on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges, and HOUCK, District Judge.*

PER CURIAM:

Calvin Cole was convicted of embezzling government funds in violation of 18 U.S.C. § 641. He appeals, alleging error in certain evidentiary rulings by the district court. Finding no error, we affirm the conviction.

Appellant was president of Virginia International Testing Laboratories, Inc. [VITL], which was under government contract with the General Services Administration [GSA] to conduct a program for motor vehicle tire testing. All money due under the contract was to be paid directly to an assignee, the First National Bank of Western Maryland.

Testimony at trial showed that on September 20, 1974, the government erroneously issued a check payable directly to VITL in the amount of $69,894.08. On October 4, 1974, GSA claims examiner Mary Rowe spoke to appellant about the erroneous check, but he denied receiving it. A few days later a verbal stop payment order was issued but apparently had no effect. The government issued another check to fulfill its obligation to the assignee bank.

Mary Rowe and GSA finance officer Stephen Tysinger questioned appellant about the missing check on October 7 and again on November 5, 1974. Each time appellant denied having received it. Appellant was later asked to sign a statement to that effect and did so in December 1974.

Subsequently, appellant admitted that he received the check in October and deposited it to VITL's account, and the funds were spent almost immediately on various VITL expenses. Appellant claimed, however, that he thought the check was payment properly issued to VITL pursuant to "Modification 5," a contract modification he had negotiated with GSA contracting officer James Williams to compensate for increased gasoline costs and other expenses resulting from the lowering of the national speed limit to 55 mph. It included some retroactive compensation, but it also specified no change in the manner of payment. Appellant explained that he thought the check he received on October 20 was the retroactive portion of "Modification 5," which had become effective five days earlier.

Cole was convicted on only one of the three counts charged in the original indictment. Another count charged that he had made "false, fictitious and fraudulent statements" concerning receipt of the check, in violation of 18 U.S.C. § 1001.[1] Cole succeeded in having this count dismissed, with the government's consent, based on the "exculpatory 'no'" defense, which precludes conviction under § 1001 based only on false exculpatory denials in response to investigative questioning. See *Paternostro v. United States*, 311 F.2d 298 (5th Cir. 1962); *United States v. Chevoor*, 526 F.2d 178 (1st Cir. 1975); *cert. den.* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *United States v. Ehrlichmann*, 379 F.Supp. 291 (D.D.C. 1974) *but see United States v. Adler*, 380 F.2d 917 (2nd Cir. 1967).

■ Appellant's primary contention is that the "exculpatory 'no'" doctrine requires the exclusion of his statements denying receipt of the check. He asserts that the court violated the "widely recognized principle that a defendant should not be prosecuted for his negative responses to questions put to him by government officers," by allowing him to be convicted on the same evidence that would be impermissible to sustain a conviction under § 1001. We disagree.

---

* Hon. C. Weston Houck, United States District Judge, District of South Carolina, sitting by designation.

1. A third count, under 18 U.S.C. § 287, was dismissed upon the government's motion after the jury announced it was deadlocked.

The "exculpatory 'no'" doctrine is not a rule of evidence but rather defines the reach of 18 U.S.C. § 1001.[2] Section 1001 carries harsher penalties than those under the perjury statute, 18 U.S.C. § 1621, but without the latter's materiality requirement and procedural safeguards. The "exculpatory 'no'" doctrine holds that to impose so severe a penalty under § 1001 for mere denials in the face of an investigator's questioning would circumvent the perjury statute. *United States v. Shanks*, 608 F.2d 73, 75 (2d Cir. 1979), *United States v. Chevoor, supra* at 184.

Here we are faced with an entirely different question—whether Cole intended to misappropriate the check. 18 U.S.C. § 641. There could hardly be a more relevant indication of that intent than appellant's denial that he ever received it. Appellant's objection that the statements are inadmissible hearsay is also meritless. F.R.E. 801(d)(2).

◼ Appellant also contends that the district court erred in limiting his cross examination of government witness James Williams. Williams testified concerning the operation of the contract. In the course of his testimony, he stated that he first became aware of Cole's desire to obtain a modification of the contract in early September 1974. Appellant sought to question him concerning a newspaper article dated two months earlier in July 1974 in which Williams was quoted as saying he was aware of VITL's problem. The district court sustained the government's objection that the inquiry was irrelevant.

We find no error in the district court's ruling. The date on which Williams knew that appellant was seeking additional compensation was clearly irrelevant to the issue of appellant's intent to misappropriate the check. The negotiations, terms, conditions and effect of "Modification 5" were fully before the jury insofar as they had any bearing on the credibility of appellant's story.

The discrepancy in Williams' recollection of the dates, moreover, was brought out on cross examination. We fail to see how any further pursuit of the irrelevant issue of VITL's need for money in July 1974 could have had any effect on Williams' credibility, especially in light of the documentary nature of the case and the defendant's own admissions.

◼ The right of confrontation and cross examination is a precious one, essential to a fair trial. *United States v. Caudle*, 606 F.2d 451 (4th Cir. 1979). But it is not so broad as to deprive the district court of all discretion in limiting needless or confusing inquiry into collateral matters. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *United States v. Haro*, 573 F.2d 661 (10th Cir.); *cert. den.* 439 U.S. 851, 99 S.Ct. 156, 58 L.Ed.2d 155 (1978).

Accordingly, the conviction is affirmed.

*AFFIRMED.*

---

**2.** We express no view as to the merits of the "exculpatory 'no'" doctrine or the correctness of its application in the dismissal of the § 1001 count in this case. Assuming, *arguendo* that it precluded the § 1001 prosecution in this case, it has no bearing whatever upon the embezzlement statute under which appellant was convicted.